(729 P.2d 1241)

No. 59,032

STATE OF KANSAS, *Appellee,* v. OTHA CHAPPELL, JR., *Appellant.*

Opinion filed December 11, 1986.

*Karen E. Mayberry,* legal intern, *Steven R. Zinn,* supervising attorney, Kansas Appellate Practice Clinic, of Lawrence, and *Benjamin C. Wood,* chief appellate defender, of Topeka, for appellant.

*Dana D. Schmidt,* legal intern, *Geary N. Gorup,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRISCOE, P.J., BRAZIL and DAVIS, JJ.

BRAZIL, J.: Otha Chappell, Jr., appeals his conviction of aggravated failure to appear. K.S.A. 21-3814.

The case was submitted to the trial court on stipulated facts as follows:

"1. The defendant, Otha Chappell, Jr., was charged on November 8, 1982, with felony theft, Sedgwick County Case No. 82 CR 1917, and was released on bond following his arrest. . . .

"2. That on February 8, 1983, defendant entered into an agreement with the Sedgwick County District Attorney's Office placing the defendant on pretrial diversion pursuant to K.S.A. 22-2907; further, that on February 8, 1983, the district court approved the diversion agreement and removed defendant's case from the criminal court trial docket. . . .

"3. That said diversion agreement required the defendant to (among other things) make monthly reports to the district attorney's office and to report any change of address.

"4. That records in the District Attorney's Office would show that the defendant made two monthly reports, one in March and one in April of 1983, and in those reports indicated a change of address from 4263 Greenhaven (as shown on the appearance bond) to 1211 ½ East English, Wichita, Kansas.

"5. That sometime after these reports were made the defendant left Kansas and failed to report further.

"6. That on June 10, 1983, and on August 5, 1983, letters were sent to the defendant at 1211 ½ East English telling him he was in violation of his diversion contract, and said letters were returned to the district attorney's office marked 'moved, left no forwarding address.'

"7. That on August 17, 1983, the district attorney filed a motion to take the defendant off diversion and place his case back on the jury trial docket, and copies of the motion and notice of hearing were sent to the defendant at 1211 ½ East English, his last known address, and to his attorney; further, that the defendant never received said motion and notice of hearing and had no knowledge of said motion and hearing.

"8. That on September 2, 1983, the motion to take the defendant off diversion was sustained by the district court without any appearance by the defendant or his attorney, and the case was set for jury trial on October 24, 1983.

"9. That on September 27, 1983, attorney Tom Fulzenloger was allowed to withdraw as attorney for the defendant; further, on September 28, 1983, attorney Andrew Busch was appointed to represent the defendant.

"10. That on December 5, 1983, the defendant's case was called for jury trial; that the defendant, because of his absence from the state, had never received notice of the October 24 or December 5 trial dates, and had no knowledge he was to appear on those dates; that neither the defendant nor his newly-appointed counsel appeared on December 5, when the case was called for jury trial; further, that the district court ordered a forfeiture of the defendant's bond on that date and issued an alias warrant for the defendant's arrest.

"11. That the defendant, because of his absence from the state, never received notice of this bond forfeiture and made no further court appearances until after his arrest on August 23, 1985.

"12. That no further trial or appearance date was set for the defendant until after he was arrested on August 23, 1985."

K.S.A. 21-3814 defines the crime of aggravated failure to appear.

"Aggravated failure to appear is willfully incurring a forfeiture of an appearance bond and failing to surrender oneself within thirty (30) days following the date of such forfeiture by one who is charged with a felony and has been released on bond for appearance before any court of this state . . . ."

To establish a violation of K.S.A. 21-3814, the State must prove that defendant incurred a forfeiture of his appearance bond, the forfeiture was incurred willfully, defendant did not surrender within 30 days following his forfeiture, and defendant was charged with a felony.

Defendant argues the diversion agreement terminated his appearance bond obligation. He claims the diversion agreement superseded the conditions of the appearance bond and, thus, the appearance bond conditions ceased to have effect. As a result, the State failed to prove an element of the crime because the appearance bond was never forfeited.

The appearance bond states that the defendant and his surety "do hereby bind ourselves to the State of Kansas in the sum of One Thousand Dollars ($1,000.00) conditioned upon the appearance of the above-named defendant on the 17th day of November, 1982 . . . and thereafter before a Judge when ordered, to answer the charge against the defendant and *from time to time thereafter as the Court may require until the case is terminated.*" (Emphasis added.) The bond specifies no conditions other than the above-mentioned times of appearance. It next states:

"If the amount of the recognizance required for the defendant's appearance *or the other conditions are modified* from the above amount or conditions, *then this bond is null and void,* and a new bond in the required amount and/or with the modified other conditions must be posted at that time.

"We, the undersigned, state that this bond is continuing in nature." (Emphasis added.)

Under the terms of the bond, if the diversion agreement constitutes a modification of the appearance bond conditions, the bond is null and void and defendant could not have breached its conditions and forfeited his appearance bond.

The applicable statutory provisions governing the provisions of diversion agreements and the failure to fulfill those provisions are found at K.S.A. 1985 Supp. 22-2909(f) and 22-2911. K.S.A. 1985 Supp. 22-2909(f) provides:

"If the county or district attorney elects to offer diversion in lieu of further criminal proceedings on the complaint and the defendant agrees to all of the

terms of the proposed agreement, the diversion agreement shall be filed with the district court and the district court *shall stay further proceedings* on the complaint." (Emphasis added.)

## K.S.A. 1985 Supp. 22-2911 states:

"(a) If the county or district attorney finds at the termination of the diversion period or any time prior thereto that the defendant has failed to fulfill the terms of the specific diversion agreement, the county or district attorney shall inform the district court of such finding and the district court, after finding that the defendant has failed to fulfill the terms of the specific diversion agreement at a hearing thereon, shall resume the criminal proceedings on the complaint.

"(b) If the defendant has fulfilled the terms of the diversion agreement, the district court shall dismiss with prejudice the criminal charges filed against the defendant."

The appearance bond conditions defendant's release upon his appearance to answer the charge against him and "from time to time thereafter as the court may require *until the case is terminated.*" (Emphasis added.) The State argues entry into the diversion agreement merely stays proceedings in the criminal prosecution; it does not terminate the case.

While we agree that the case was not terminated by the diversion agreement, we believe that it was indefinitely removed from the criminal trial docket by operation of K.S.A. 1985 Supp. 22-2909(f). From that point until such time, if ever, that the criminal proceedings would be resumed pursuant to K.S.A. 1985 Supp. 22-2911, the defendant would have no obligation to appear in court on these charges. Absent a duty to appear, there would be no basis for a continuing bond. We believe this constitutes a modification that, upon the bond's own terms, would render it null and void.

The State apparently argues that, at most, the bond conditions were merely suspended and would be automatically reinstated upon the defendant's violation of the terms of the diversion agreement. We disagree.

Assuming, however, that the defendant's bond was continuing, and assuming further that the State established the element of forfeiture, it also must have proved that the forfeiture was willful. In *State v. Rodgers*, 225 Kan. 242, 247, 589 P.2d 981 (1979), the Kansas Supreme Court held:

"In a prosecution for aggravated failure to appear under K.S.A. 21-3814 the State is not required to notify the defendant of the forfeiture of the appearance bond as provided in K.S.A. 1977 Supp. 22-2807 in order to establish the element of willfulness in 21-3814. To establish willfulness it is sufficient if the State prove

the defendant failed without just cause or excuse to surrender himself within thirty (30) days following the forfeiture of his appearance bond. When the State has introduced evidence that a defendant entered into *a personal recognizance requiring his appearance in a court on a day certain,* as in the present case, that he thereafter failed to appear, and that following the forfeiture of the appearance bond he failed to surrender himself within thirty (30) days thereafter a prima facie case of willfulness has been established by the State."

In the present case, there was no day certain on which defendant was to appear in court. The case was indefinitely removed from the trial docket by operation of law upon execution of the diversion agreement.

The State argues that the terms of the diversion agreement expressly specified the consequence of breaching the agreement. Defendant knew he breached the agreement and knew that because of the breach his trial on the felony theft charge would be rescheduled. Under *Rogers,* the State contends defendant did not have to be notified of his bond forfeiture to willfully forfeit that bond.

Defendant's diversion agreement provided:

"Should you violate any of the conditions of this supervision, the District Attorney may revoke or modify any conditions of this diversion program, change the period of supervision, or ask the Court to reinstate this case on the trial docket for further prosecution. In the event of your violation of any of said conditions and prior to initiating any of the above actions, you will be furnished with notice, at your last known address as shown in our files from your most recent reporting document, specifying the conditions of your program which you have violated. The District Attorney may release you from supervision at any time."

As noted in the stipulated facts, defendant violated the agreement by failing to report to the diversion office after two initial visits by moving out of state and not reporting a change of address.

In *Clinkingbeard v. State,* 6 Kan. App. 2d 716, 717, 634 P.2d 159 (1981), the court discussed the definition of willful conduct and stated: "'Willful conduct' is statutorily defined as 'conduct that is purposeful and intentional and not accidental. As used in this code, the terms "knowing," "intentional," "purposeful," and "on purpose" are included within the term "willful."'" K.S.A. 21-3201(2)."

Despite the State's contention that defendant knew proceedings would be reinstated, the language of the diversion agreement gives the district attorney three options once a violation occurs. The district attorney may revoke or modify any condi-

tions of the diversion. He may change the period of supervision, *or* ask the court to reinstate the case. Although defendant did knowingly breach his diversion agreement it was not clear that criminal proceedings would definitely be reinstated. Thus, defendant had no actual notice that his case had been reset on a date certain, what that date certain was, or that his bond was forfeited when he failed to appear on that date, December 5, 1983. The State cites no authority for equating the willful violation of a diversion agreement with the forfeiture of an appeal bond. *Rodgers* may be distinguished in that, once Chappell entered into the diversion agreement, he did not know the specific date on which he was supposed to appear. Under *Rodgers*, a defendant does not need to receive notice of his *bond forfeiture* to establish willful failure to appear, but defendant should receive notice that his case is set for trial and what that trial date is before he can willfully forfeit the bond by not appearing. In light of the fact that defendant could not have definitely known that his case had been reinstated and on what date it was reset, defendant did not willfully forfeit his bond.

Reversed.